UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SEAN DENISON,<br><br>                  Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL, Deputy Commissioner of Social Security for Operations,<br><br>                  Defendant. | Case No. C17-1881 RAJ<br><br>**ORDER AFFIRMING THE COMMISSIONER'S FINAL DECISION AND DISMISSING THE CASE WITH PREJUDICE** |

Plaintiff seeks review of the denial of his applications for Supplemental Security Income and Disability Insurance Benefits. Plaintiff contends the ALJ erred in evaluating the medical evidence and his testimony. Dkt. 10. As discussed below, the Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

**BACKGROUND**

Plaintiff is currently 41 years old, has a high school education, and has worked as a janitor. Administrative Record (AR) 1165-66. Plaintiff applied for benefits in 2009, alleging disability as of September 1, 2006. AR 134, 138. Plaintiff's applications were denied initially, on reconsideration, and by an ALJ decision in 2011. AR 60-63, 26. Plaintiff appealed to this Court and, based on a stipulated motion, Magistrate Judge Brian A. Tsuchida remanded the case

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 1

for further administrative proceedings. AR 610-11, 605-06. On remand, the ALJ issued a decision in 2015 finding plaintiff was disabled beginning June 1, 2012. AR 1212-30. Plaintiff appealed to this court again, and Magistrate Judge J. Richard Creatura concluded that the ALJ erred in evaluating the medical evidence and remanded the case for further administrative proceedings related only to the period before June 1, 2012. AR 1240-55. On remand, after ALJ Adams conducted a hearing in May 2017, the ALJ issued a decision finding plaintiff not disabled. AR 1176, 1147-67.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found that between the September 1, 2006, alleged onset date and May 31, 2012:

**Step one:** Plaintiff did not engage in substantial gainful activity.

**Step two:** Plaintiff had the following severe impairments: affective disorder, posttraumatic stress disorder (PTSD) and/or other anxiety disorder, and substance use disorder.

**Step three:** These impairments did not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity:** Plaintiff could perform work at all exertional levels. He could understand, remember, and carry out simple and some more complex instructions, required of up to semi-skilled jobs. He could make judgment commensurate with the functions of unskilled and semi-skilled work. He could respond appropriately to supervision, but could not work in close coordination with coworkers where teamwork was required. He could deal with occasional changes in the work environment and could perform work that required no contact with the general public to perform the work tasks.

**Step four:** Plaintiff could perform past relevant work.

**Step five:** As there are jobs that exist in significant numbers in the national economy that plaintiff could have performed, plaintiff was not disabled.

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

AR 1150-67. Plaintiff did not file exceptions and the Appeals Council did not accept review, making the ALJ's decision the Commissioner's final decision.[3]

**DISCUSSION**

This Court may set aside the Commissioner's denial of social security benefits only if the ALJ's decision is based on legal error or not supported by substantial evidence in the record as a whole. *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017). All of an ALJ's findings must be supported by substantial evidence. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, the Commissioner's rational interpretation must be upheld. *Id.*

There is no dispute that plaintiff has been disabled since June 1, 2012, due to anxiety disorder (including PTSD), affective disorder (bipolar, schizoaffective, or depressive disorder), and alcohol abuse. AR 488. There is also no dispute that plaintiff has suffered from some level of these disorders since well before the relevant period, even while he was engaged in substantial gainful activity. The issue in this case is when his disorders became disabling, namely, whether

---

[3] The rest of the procedural history is not relevant to the outcome of the case and is thus omitted.

it was before June 1, 2012.

**A.      Medical Opinions**

An ALJ may only reject the uncontradicted opinion of a treating or examining doctor by giving "clear and convincing" reasons. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Even if a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by stating "specific and legitimate" reasons. *Id.* The ALJ can meet this standard by providing "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citation omitted). "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725.

**1.      Opinions Issued June and July 2012**

Plaintiff contends the ALJ erred by failing to retroactively apply the June 13, 2012 opinions of Shauntae Willis, LICSW, CDP,[4] and failing to address the July 2, 2012 opinions of Robert E. Parker, Ph.D. Dkt. 10 at 6-7. These two medical sources' opinions were credited by the 2015 ALJ decision and, along with treatment notes and a lay witness statement, established plaintiff's disability beginning June 1, 2012. AR 500.

Plaintiff contends the ALJ erred by failing to address Dr. Parker's July 2012 opinions. Dkt. 10 at 6-7. However, the order by Magistrate Judge Creatura specifically directed that the "medical evidence from [June 1, 2012,] forward need not be evaluated again…." AR 1254. Given that Dr. Parker had not even seen plaintiff before July 2, 2012, there was no need to specifically address this opinion. *See* AR 1069. The ALJ only addressed Ms. Willis' report

---

[4] Licensed Independent Clinical Social Worker and Chemical Dependency Professional. *See* Wash. Admin. Code §§ 246-809-310, 246-811-010.

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 4

insofar as it effectively marked the endpoint of the relevant period.

Ms. Willis is a medical source but not an "acceptable" medical source. *See* 20 C.F.R. §§ 404.1502(a), (i); 416.902(a), (i). An ALJ may discount a non-acceptable medical source's opinions by giving a germane reason. *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014). Here, the ALJ determined that Ms. Willis' June 2012 opinions had no retroactive application because of "a lack of evidence of worsening psychological functioning leading up to Ms. Willis's assessment in June 2012." AR 1163. This finding is supported by substantial evidence in the record and is a germane reason not to apply the opinions retroactively. The notes of plaintiff's treating physician Robert Killian, M.D., as late as April 2012 show that plaintiff presented as "restless" at worst and generally only "pleasant and appropriate, alert and oriented." AR 762, 757, 759. Then there is a gap in treatment notes but, beginning in February 2013, Dr. Killian documented plaintiff "experiencing a psychological issue"; "isolating to his bedroom"; and presenting with poor hygiene. AR 752, 750, 748, 746, 744.

Plaintiff argues that the ALJ's finding of a lack of worsening leading up to June 2012 means that plaintiff's condition remained constant and thus his disability began before June 2012. Dkt. 10 at 7. The Court disagrees with this interpretation. The ALJ reasonably found that the worsening of plaintiff's condition did not happen before the June 1, 2012 established onset date of disability. He thus permissibly discounted Ms. Willis' June 13, 2012 opinions with regard to the period before June 1, 2012. With a worsening condition it is always difficult to pinpoint a precise date when impairments became disabling. But the ALJ's interpretation is a reasonable one and thus must be upheld. *Thomas*, 278 F.3d at 954. The Court concludes that the ALJ did not err by discounting Ms. Willis' June 2012 opinions with regard to the period before June 2012, or by failing to address Dr. Parker's July 2012 opinions.

## 2. Dr. Killian's 2011 Opinion

Dr. Killian opined in a June 2011 evaluation that plaintiff would miss work four or more days per month. AR 366. The ALJ gave Dr. Killian's opinions "minimal weight" as conclusory and inconsistent with his own treating records and plaintiff's activities. AR 1160. The only error[5] plaintiff alleges is that the ALJ failed to address the factors the Commissioner has set forth for weighing medical opinions. Dkt. 10 at 8; *see also* 20 C.F.R. §§ 404.1527(c), 416.927(c). When analyzing a treating physician's opinion that has not been given controlling weight, the ALJ must "consider factors such as the length of the treating relationship, the frequency of examination, the nature and extent of the treatment relationship, or the supportability of the opinion." *Trevizo*, 871 F.3d at 676. However, as the Ninth Circuit clarified in a recent unpublished decision, an "ALJ is not required to make an express statement that she considered all the factors outlined in 20 C.F.R. [§§ 404.1527(c), 416.927(c)]." *Kelly v. Berryhill*, 732 F. App'x 558, 562 n. 4 (9th Cir. 2018). The ALJ here expressly noted that Dr. Killian was a "treating physician" and addressed in detail the supportability of his opinions and their consistency with the overall record, all of which are relevant factors outlined in the regulations. AR 1160; *see* 20 C.F.R. §§ 404.1527(c)(2)-(4), 416.927(c)(2)-(4). The ALJ found that supportability and consistency were the deciding factors here. AR 1160. That finding is supported by substantial evidence.

---

[5] Even if plaintiff had alleged additional errors in evaluating Dr. Killian's opinion, the "ALJ need not accept the opinion of any physician, including a treating physician, if [as here] that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas*, 278 F.3d at 957. The only explanation Dr. Killian gave for predicting plaintiff would miss work at least four days per month was the conclusory statement that he "[n]ever leaves home." AR 366. When asked to describe symptoms and clinical findings, Dr. Killian wrote "[n]one to report" and "N/A" respectively. AR 365. Nor do his treatment notes reveal a basis for such extreme limitations. *See* AR 226-29, 290-93, 367-78, 754-62.

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 6

Plaintiff attempts to give more weight to Dr. Killian's opinion by citing the 2011 opinion of Scot Gibson, M.D., that plaintiff would be markedly limited in completing a normal workday or workweek. Dkt. 10 at 7 (citing AR 411). However, plaintiff does not challenge the ALJ's discounting of Dr. Gibson's opinion and, in any case, the Court does not substitute its judgment for the Commissioner's by reweighing the evidence. *See Thomas*, 278 F.3d at 954.

Plaintiff further attempts to add weight to Dr. Killian's opinion by citing the testimony of medical expert Nathan R. Strahl, M.D., Ph.D., who answered "Yes" when counsel asked whether "being the long-term treating provider would put [Dr. Killian] in a good position to see those ups and downs and when he's going to have these bad days." AR 1197. Plaintiff's alleged error seems to be that the ALJ did not expressly evaluate this statement. Dkt. 10 at 8-9. However, an "'ALJ is not required to discuss evidence that is neither significant nor probative.'" *Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) (quoting *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003)). Dr. Strahl's statement is neither significant nor probative on the issue of how many days of work plaintiff would miss, nor on the value of a treating physician's opinions. The Commissioner's regulations already incorporate the knowledge that long-time treatment providers "are likely to be the medical professionals most able to provide a detailed, longitudinal picture" of a claimant's impairments. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

The Court concludes the ALJ did not err by rejecting Dr. Killian's opinion that plaintiff would miss work four or more days per month.

**3.   Other Opinions**

Plaintiff contends the ALJ erred by rejecting the medical opinions of Dr. Killian in 2009 (AR 414), Charles Quinci, Ph.D., in 2009 (AR 216), Dr. Gibson in 2011 (AR 410), Gabriela Mondragon, MSW, in 2009 (AR 258), Nina Rapisarda, MSW, in 2010 (AR 429), and Ms. Willis

in 2011 (AR 437). Dkt. 10 at 10-12. He argues that the ALJ "cherry-picked" each medical source's normal findings while ignoring abnormal findings, and that the sources were in the best position to interpret the mix of normal and abnormal results. Dkt. 10 at 10-12. Plaintiff cites *Reddick*, which states that this Court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." 157 F.3d 715, 720 (9th Cir. 1998). While that is true, the Court will not reweigh the evidence. "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews*, 53 F.3d at 1039. This Court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." *Id.* at 1039-40.

The Commissioner's regulations treat medical experts' opinions with special respect, and the Ninth Circuit sets a higher bar for rejecting acceptable medical sources' opinions than lay statements. *See* 20 C.F.R. §§ 404.1527, 416.927; *Revels*, 874 F.3d at 654-55 ("specific and legitimate" reasons required to discount acceptable medical source's opinion; "germane" reason to discount non-acceptable medical source opinions or lay witness statements). Yet plaintiff's argument that "clinicians' [sic] who made these observations and examination findings are in the best position to interpret these test findings" would mean that an ALJ could never discount a medical expert's opinion. Dkt. 10 at 11. However, the Ninth Circuit's standard is that an ALJ may reject a doctor's contradicted opinion for "specific and legitimate" reasons supported by substantial evidence. *See Revels*, 874 F.3d at 654. Plaintiff's citation of *Morales v. Apfel* is inapposite. In *Morales*, the ALJ relied on his own speculations to reject a treating doctor's opinions. Here the ALJ did, as the court instructed in Morales, "consider the medical findings that support a treating physician's opinion that the claimant is disabled" and reject the opinion

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 8

based on "contradictory medical evidence" instead of his "own credibility judgments." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000).

Plaintiff's argument that the ALJ erred by crediting only part of each source's opinions is unavailing. He offers no authority for the proposition that an ALJ must accept an entire report of opinions or reject it entirely. *See* Dkt. 10 at 10-11. As long as the ALJ offered specific and legitimate reasons to discount portions of the opinions, the Court must uphold the ALJ's decision. *See Revels*, 874 F.3d at 654. The ALJ's decision provided specific and legitimate reasons to discount each doctor's opinion, and germane reasons to discount the other medical sources' opinions. AR 1159-63. Plaintiff's blanket arguments covering six separate opinions do not identify any error in the ALJ's reasons to discount the opinions. The Court concludes the ALJ did not err by discounting these opinions.

### 4. Global Assessment of Functioning (GAF) Scores

"A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Vargas v. Lambert*, 159 F.3d 1161, 1164 (9th Cir. 1998) (citing *Diagnostic and Statistical Manual of Mental Disorders* 20 (3rd ed., rev.1987)). Plaintiff contends the ALJ erred by failing to expressly address several GAF scores in the record, ranging from 45 to 60.[6] Plaintiff argues that his situation is similar to that in *Garrison v. Colvin*, 759 F.3d 995 (9th Cir. 2014). *Garrison* does not, as plaintiff implies, stand for the proposition that GAF scores alone can establish disability. The court in *Garrison* cited consistent GAF scores across time as only one of several pieces of

---

[6] Many were contained in the opinions discussed above and are adequately addressed by the evaluation of the opinions as a whole. The remainder were in treatment notes. *See* Dkt. 10 at 9 (citing AR 241, 300, 306, 311, 408, 446, 464, 467, 836).

evidence showing that the claimant remained disabled despite waxing and waning symptoms, and concluded the ALJ had erred by relying on "a few short-lived periods of temporary improvement" that misrepresented the record as a whole. 759 F.3d at 1018. Plaintiff has not shown that the ALJ misrepresented the record as a whole, and *Garrison* does not establish that it is error for an ALJ to remain silent as to GAF scores. In fact, the Ninth Circuit has repeatedly upheld ALJ decisions that do not address GAF scores. *See McFarland v. Astrue*, 288 F. App'x 357, 359 (9th Cir. 2008) ("the ALJ's failure to address the three GAF scores specifically does not constitute legal error"); *Pinegar v. Comm'r of Soc. Sec. Admin.*, 499 F. App'x 666, 667 (9th Cir. 2012) ("the ALJ did not err by not considering Pinegar's Global Assessment of Functioning scores").

Plaintiff argues that GAF scores are medical opinions, and therefore must be addressed explicitly in an ALJ's decision. Dkt. 10 at 9-10; Dkt. 12 at 2. Plaintiff provides no authority for this proposition. He relies on the Commissioner's regulatory language that medical opinions "reflect judgments about the nature and severity of [a claimant's] impairment(s), including [his or her] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [his or her] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1). Every piece of medical evidence says *something* about a claimant's impairments, but evidence itself does not reflect a medical source's professional *judgment* in evaluating a collection of evidence. Plaintiff also cites *Rollins v. Massanari*, but *Rollins* establishes that GAF scores are "medical evidence," not medical opinions. 261 F.3d 853, 857 (9th Cir. 2001). GAF scores are not medical opinions that must be addressed.

The Court concludes the ALJ did not err by failing to expressly address the GAF scores.

B.  **Plaintiff's Symptom Testimony**

Where, as here, an ALJ has determined that the claimant has presented objective medical evidence of underlying impairments that could reasonably be expected to produce the alleged symptoms, and there is no affirmative evidence of malingering, the ALJ can reject the claimant's testimony about the severity of his symptoms only by offering "specific, clear and convincing" reasons supported by substantial evidence. *Garrison*, 759 F.3d at 1014-15.

Plaintiff reported that his "anxiety makes it difficult to leave [the] house much" and that he is hypervigilant, paranoid, and has panic attacks, mood swings, and anger problems. AR 170, 42, 43, 49-50. The ALJ discounted his symptom testimony because he had worked with the allegedly disabling conditions, his allegations were contradicted by the medical evidence, and his activities were inconsistent with his allegations. AR 1155-58.

**1.  Work History**

Plaintiff reported that he had "always had depression, PTSD and anxiety" and that his life was "not a functional one. Never has been." AR 168, 175. Plaintiff consistently told providers that he had suffered from mental illness most of his life. *See*, *e.g.*, AR 415 ("Long history of mental health issues"). He reported spending weeks in a mental health hospital as a teenager. AR 420, 429. Yet plaintiff worked at the substantial gainful activity level as a janitor from 1997 to 2006. AR 157. Plaintiff has not offered any evidence that his condition worsened substantially upon quitting his job in September 2006.

Plaintiff's own reports and hospitalization history were substantial evidence that plaintiff had the allegedly disabling conditions while he was gainfully employed. Working despite the allegedly disabling conditions is a clear and convincing reason to discount a claimant's testimony. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009)

(upholding ALJ's adverse credibility determination because, among other reasons, claimant had worked since the alleged onset date); *Gregory v. Bowen*, 844 F.2d 664, 667 (9th Cir. 1988) (condition not disabling where "substantial evidence indicated that the condition of Gregory's back had remained constant for a number of years and that her back problems had not prevented her from working over that time"); *Lobato v. Astrue*, Case No. 11-01337, 2012 WL 5992280, at *9 (C.D. Cal. Nov. 30, 2012) (upholding adverse credibility determination because "despite plaintiff's contention that she suffered from mental impairments for many years prior to when she stopped working, plaintiff continued to work at her job as a janitor"); *Beck v. Colvin*, No. 13-1314, 2014 WL 4251611, at *8 (C.D. Cal. Aug. 27, 2014) ("That Plaintiff's 'allegedly disabling impairments were present at approximately the same level of severity prior to the onset date' and that she worked 'despite having the [symptoms]' at the time of the hearing are clear and convincing reasons for discounting her allegations."). The Court concludes the ALJ did not err by relying on plaintiff's work history to discount his symptom testimony.

### 2. Medical Evidence

The ALJ found that from 2006 to 2009, other than chemical dependency, plaintiff did not complain of mental health problems or receive significant mental health treatment and, even while untreated, had largely normal clinical findings. AR 1156. In addition, the ALJ found that plaintiff's conditions improved after starting treatment in 2009, and his examination findings were generally normal. AR 1156-57. Based on these findings, the ALJ concluded that the medical evidence contradicted plaintiff's claims of disabling impairments. AR 1157.

Substantial evidence supports the ALJ's findings. Treatment records from plaintiff's primary care provider, Dr. Killian, are extremely minimal in 2006 and 2007, but the only mental health-related information is a request for Lexapro. AR 229. After a gap of almost two years,

plaintiff returned in January 2009. AR 228. Dr. Killian prescribed medications for depression, anxiety, and bipolar disorder. AR 227. Dr. Killian did not note any major changes in plaintiff's mental health condition before plaintiff's established disability onset date of June 2012. *See* AR 227 (in August 2009, plaintiff "feels more stable"), 291 (in February 2010, plaintiff "is overall well"). While Dr. Killian did not record detailed mental status examination findings, providers at Central Washington Comprehensive Mental Health also treated plaintiff and performed mental status examinations, the results of which were largely normal. *See*, *e.g.*, AR 240 (all results normal except anxious mood and obsessive thoughts in January 2010), 246-47 (generally normal results in November 2009). In contrast, after the June 2012 established disability onset date, providers noted extreme symptoms such as "delusions or hallucinations for at least 2 weeks" at a time. AR 1087 (January 2015).

The ALJ did not, as plaintiff suggests, rely on an "unexplained or inadequately explained" failure to seek treatment to discount plaintiff's testimony. Dkt. 12 at 7. Rather, the ALJ cited plaintiff's effective treatment and "generally normal examination findings" before June 2012. AR 1157. "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility" for social security benefits. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). And the medical evidence is a factor that the ALJ can consider in his credibility analysis. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). While subjective symptom testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's [symptoms] and [their] disabling effects." *Rollins*, 261 F.3d at 857.

Plaintiff cites records where he reported ongoing symptoms and argues that the ALJ

"cherry-picked" the record to find isolated instances of improvement. Dkt. 10 at 18-19. However, looking at the record as a whole, there is substantial evidence to support the ALJ's findings. The ALJ's examples do not misrepresent the record. Mental status examination results were consistently largely normal. *See*, *e.g.*, AR 406, 1062. Although the record may also contain substantial evidence to support plaintiff's preferred interpretation, that is not enough for the Court to reverse the ALJ's decision. "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas*, 278 F.3d at 954.

The Court concludes the ALJ did not err by relying on relatively mild clinical findings as an additional reason to discount plaintiff's testimony.

### 3. Activities

The ALJ discounted plaintiff's symptom testimony because his travels and sobriety meeting attendance "are incompatible with testimony of severe social phobia" and his "caretaking is also inconsistent with alleged inability to maintain concentration on even simple household tasks." AR 1158.

Substantial evidence supports the ALJ's findings that plaintiff attended sobriety meetings regularly and traveled not infrequently. In September 2009 he attended meetings "almost 2 times a day every day." AR 260. In January 2010 he was still attending meetings "regularly." AR 240. The ALJ did not err by concluding that the ability to leave his house, utilize transportation, and attend meetings up to twice a day undermines plaintiff's testimony that his mental symptoms make it difficult to leave the house or be around people. Plaintiff argues that a relationship with a sobriety sponsor (and presumably other people at sobriety meetings) is "not a particularly social relationship," but the ability to leave his house and attend these events still

contradicts plaintiff's allegations. Dkt. 10 at 15.

Similarly, the extent of plaintiff's travels is inconsistent with his alleged disability. The record suggests he traveled in February, March, April, and May in 2011 alone. AR 475, 474, 473. While plaintiff argues that his allegations were that being around people is hard, not impossible, the extent of his discretionary travels suggests that he was willing to make the effort rather frequently. Plaintiff argues that he needs a friend to leave the house, but there is no indication that he traveled with a friend every time. Dkt. 10 at 15 (citing AR 170, 171). Plaintiff also argues that because he traveled on a few occasions after the established disability onset date of June 2012, travel cannot be incompatible with disability. Dkt. 10 at 15. However, the period after June 2012 is not at issue here. After June 2012 plaintiff had episodes of decompensation and clinical findings such as poor hygiene that were not previously present, and thus the disability inquiry is different for that period. AR 500. As discussed above, plaintiff's interpretation of the evidence may be rational, but the Court's only inquiry is whether the ALJ's interpretation is rational. Because it is, the Court must affirm.

The ALJ's finding that plaintiff's caretaking of the man he regarded as a father contradicted his allegations was also supported by the record. Plaintiff testified that he helped bathe, clothe, and prepare meals for his father for at least some period of time. AR 38-39. This contradicts his allegation that he does not "have the attention for" cooking and cannot focus enough to do house or yard work. AR 169-70.

The Court concludes the ALJ did not err by discounting plaintiff's symptom testimony because his work history, medical evidence, and activities provided sufficiently clear and convincing reasons.

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 15

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

DATED this 24th day of September, 2018.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge